United States District Court
Southern District of Texas
**ENTERED**
June 18, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **WAREHOUSE SOLUTIONS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:25-CV-00294** |
| | § | |
| **PENN-AMERICA INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Warehouse Solutions, Inc. ("Warehouse") alleges that a 2023 wind and hailstorm damaged its commercial property. Penn-America Insurance Company ("Penn-America") insured the property. After Penn-America partially denied the claim, Warehouse sued for breach of contract and several bad-faith claims.

Pending before the Court is Penn-America's Opposed Motion to Compel Appraisal Process and Motion to Abate. (Dkt. No. 15). For the following reasons, the Court **GRANTS** the Motion. (*Id.*).

## I.　BACKGROUND

Warehouse owns commercial property in McAllen, Texas. (Dkt. No. 16 at 5). Penn-America insured the property under a policy that includes an appraisal clause for resolving disputes over the value of a covered loss. (Dkt. No. 15-1 at 67).

In April 2023, a wind and hailstorm allegedly damaged Warehouse's insured commercial property. (Dkt. No. 16 at 5). In July 2023, Warehouse reported the loss to

Penn-America, (*id.*), who inspected the property, (Dkt. No. 15 at 1–2).  It partially paid and denied Warehouse's claim in October 2023.  (*Id.* at 2); (*see also* Dkt. No. 16-5).

Dissatisfied with Penn-America's inspection, Warehouse retained its own expert to inspect the property.  (Dkt. No. 16 at 5).  In July 2024, Warehouse sent a demand letter asserting that Penn-America underpaid the claim, breached the policy, and violated Texas insurance law.  (Dkt. No. 15 at 2).  Penn-America responded with a "breakdown of payment calculations" that compared the Parties' competing damages estimates.  (Dkt. No. 16-3 at 2).  Penn-America's counsel also said: "Please call me to see if we can agree to a figure that bridges the gap between the above numbers with consideration for the damages that are not covered.  If we cannot come to an agreement, we would be willing to consider mediation as a means of trying to resolve this matter."  (*Id.* at 2).

In March 2025, Warehouse sued Penn-America in state court in Hidalgo County for breach of contract, noncompliance with the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, responsibility for acts of agents and ratification of acts, and breach of the duty of good faith and fair dealing.  (Dkt. No. 1 at 2, 11, 13–18).  Penn-America answered in June 2025, (*id.* at 21), and later removed the case to this Court based on diversity jurisdiction, (*id.* at 3).  After removal, the Parties filed their Joint Discovery/Case Management Plan stating that they remained willing to negotiate.  (Dkt. No. 8).  The Parties also exchanged written discovery.  (Dkt. No. 15 at 2); (Dkt. No. 16 at 7).  And in January 2026, Warehouse designated its experts.  (Dkt. No. 16 at 8); (*see also* Dkt. No. 9).

On February 5, 2026, the Parties unsuccessfully mediated the case, (Dkt. No. 13), which was well before the June 22, 2026, Scheduling Order deadline. (Dkt. No. 9). On March 2, 2026, Penn-America designated its experts. (Dkt. No. 14); (*see also* Dkt. No. 9).

On March 26, 2026, Penn-America invoked appraisal, (Dkt. No. 15-2 at 1–2), and moved to compel it on April 10, 2026, (*see generally* Dkt. No. 15). Warehouse responded, (Dkt. No. 16), Penn-America replied, (Dkt. No. 17), and Warehouse sur-replied, (Dkt. No. 18).

## II.    LEGAL STANDARD

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Nat'l Liab. & Fire Ins. v. R&R Marine, Inc.*, 756 F.3d 825, 834 (5th Cir. 2014) (quoting *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996)). Accordingly, this Court applies "the substantive insurance law of Texas." *Int'l Ins. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005).

"An insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed . . . ." *In re Farmers Tex. Cnty. Mut. Ins.*, 621 S.W.3d 261, 270 (Tex. 2021) (orig. proceeding) (quoting *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018)). Policies are construed in the same manner as any other contract. *Menchaca*, 545 S.W.3d at 488. Appraisal clauses are included in most insurance policies as a way of resolving disputes over the amount of covered losses. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888–89 (Tex. 2009). "These clauses are generally enforceable, absent illegality or waiver." *In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d 404, 407 (Tex. 2011) (orig. proceeding).

"In the case of an insurer trying to enforce a condition precedent . . . a proper remedy is abatement . . . ." *U.S. Pecan Trading Co. v. Gen. Ins. Co. of Am.*, No. 3:08-CV-00347, 2008 WL 5351847, at \*2 (W.D. Tex. Nov. 6, 2008) (citing *Lidawi v. Progressive Cnty. Mut. Ins.*, 112 S.W.3d 725, 735 (Tex. App.—Houston [14th Dist.] 2003, no pet.)).  Indeed, "the majority of Texas courts have held that when a plaintiff asserts extra-contractual claims in addition to a claim for breach of contract, it is in the best interest of justice that the entire case be abated pending appraisal." *Johnson v. Liberty Mut. Fire Ins.*, No. 4:14-CV-00604, 2015 WL 11170153, at \*3 (E.D. Tex. Oct. 30, 2015) (collecting cases).  "Extra-contractual claims include violations of Chapters 541 and 542 of the Texas Insurance Code, breach of the duty of good faith and fair dealing, and violations of the DTPA." *GeoVera Spec. Ins. Co. v. Walker*, No. 4:20-CV-01361, 2021 WL 5351721, at \*4 (S.D. Tex. Aug. 9, 2021) (citing *Hamilton Props. v. Am. Ins. Co.*, 643 F.App'x 437, 442 (5th Cir. 2016) (per curiam)).

## III.    DISCUSSION

Warehouse does not dispute that the insurance policy contains an appraisal clause. (*See generally* Dkt. Nos. 16, 18).  Instead, Warehouse argues that (i) appraisal is inappropriate due to coverage issues, (ii) Penn-America has waived appraisal, and (iii) abatement of the case is unwarranted. (*See id.*).  The Court addresses each argument in turn.

4

### A.    PROPRIETY OF APPRAISAL

Warehouse argues "that this is a coverage dispute, not an amount-of-loss dispute." (Dkt. No. 16 at 9).  In its view, Penn-America never acknowledged covered damage, offered payment, or disputed the amount of any recognized loss.  (*Id.* at 6).

The record says otherwise.  Penn-America admitted at least some covered damage. First, Penn-America told Warehouse in July 2024 that, while it "consider[ed] the hail damage to the metal roof to be cosmetic in nature, which would be excluded under the policy language, [it was] open to settlement discussions for the building damage."  (*Id.*). That statement acknowledged covered damages and invited negotiations over valuation. Second, by pointing to Penn-America's damages calculation to prove its waiver defense, (Dkt. No. 18 at 5), Warehouse implicitly acknowledged that Penn-America did find covered damage under the policy, albeit at a significantly lower value than Warehouse did.  Accordingly, there is a dispute over both the amount of loss and coverage, and appraisal is appropriate.

### B.    WAIVER OF APPRAISAL

Warehouse argues that even if appraisal is appropriate, Penn-America waived that right. To establish waiver, Warehouse must show: (1) an impasse in negotiations; (2) an unreasonable delay in invoking appraisal after that impasse; and (3) prejudice.  *In re Universal Underwriters*, 345 S.W.3d at 407–12.   An impasse requires "a mutual understanding that neither will negotiate further," and the parties are aware of the futility of further negotiations.  *Id.* at 409–10.  Warehouse bears the burden on each element.  *See In re Allstate Vehicle & Prop. Ins.*, 549 S.W.3d 881, 889 (Tex. App.—Fort Worth 2018, orig.

proceeding) (first citing *In re Universal Underwriters*, 345 S.W.3d at 411; and then citing *In re State Farm Lloyds, Inc.*, 170 S.W.3d 629, 634 (Tex. App.—El Paso 2005, orig. proceeding)).

### 1.    Impasse

Penn-America argues that an impasse occurred on February 5, 2026. (*See* Dkt. No. 15 at 2 ("The parties participated in early mediation on February 5, 2026, which did not resolve the case.")). It is not clear when exactly Warehouse believes the impasse occurred. Warehouse seemingly acknowledges that impasse *could* have occurred on that date. (*See* Dkt. No. 16 at 12 ("[I]mpasse occurred no later than February 05, 2026, when Penn-America issued its fourth and final denial.")). But Warehouse also asserts that the impasse arose (1) in March 2025 just prior to filing suit during the claim process, (*id.* at 3); (*see also* Dkt. No. 1 at 11), (2) "no later than the time [Penn-America] removed this case to federal court and began aggressively litigating it" in June 2025, (Dkt. No. 18 at 4), and (3) "over an eighteen-month period" beginning in July 2024, (*id.* at 3).

The Court finds that impasse occurred on February 5, 2026. The record does not support Warehouse's allegation that impasse occurred "immediately prior to [it] filing suit." (Dkt. No. 16 at 3). Warehouse argues that Penn-America's pre-suit conduct, consisting of its denials of coverage, (*id.* at 6), and its request for an "expert report," (Dkt. No. 18 at 3 (citing Dkt. No. 17-7)), demonstrates that the Parties were no longer negotiating. As discussed though, *see supra* III(A), Penn-America's July 2024 letter expressly invited further negotiations over the amount of loss. (*See* Dkt. No. 16-3 at 2). And requesting an expert report to substantiate Warehouse's pre-suit demand was permitted under the policy. (*See* Dkt. No. 15-1 at 67–68). In the event of loss or damage,

6

Warehouse had a duty to "give [Penn-America] complete inventories of the damaged and undamaged property[,] [i]nclud[ing] quantities, costs, values and amount of loss claimed" upon Penn-America's request. (*Id.*). Exercising a contractual right to request documentation does not signal that negotiations have ended.

Warehouse also alleges that impasse occurred no later than June 2025 when Penn-America "removed this case to federal court and began aggressively litigating it." (Dkt. No. 18 at 4). Removal in and of itself does not waive appraisal or show an unwillingness to negotiate. *See In re QBE Specialty Ins. Co.*, No. 01-19-00164-CV, 2020 WL 6140180, at *5–6 (Tex. App.—Houston [1st Dist.] Oct. 20, 2020, orig. proceeding) ("[Plaintiff] does not cite any authority that identifies [removal of the case to federal court] as a waiver of the appraisal process, and we have not found any."). Nor did Penn-America's litigation conduct signal an unwillingness to negotiate. The Parties' Joint Discovery/Case Management Plan repeatedly stated that both sides remained willing to negotiate. (Dkt. No. 8). And written discovery was exchanged to prepare for mediation. (Dkt. No. 17-2 at 2 ("I think once we've exchanged our discovery responses and production next week, both of our clients should be in a good position to mediate.")). Participating in mediation signals the opposite of an impasse—that is, a willingness to negotiate. *See Hamorsky v. Allstate Vehicle & Prop. Ins. Co.*, 455 F.Supp.3d 292, 298 (E.D. Tex. 2020). The Court therefore rejects Warehouse's contention that impasse occurred no later than June 2025.

Warehouse's allegation that impasse occurred "over an eighteen-month period" beginning in July 2024 fares no better. (Dkt. No. 18 at 3). Warehouse does not cite (and the Court cannot locate) any case that treats impasse like a slow, gradual slide. Rather,

Texas law recognizes a "point of impasse." *See In re Universal Underwriters*, 345 S.W.3d at 408. Under Warehouse's framing, the totality of the 18 months of Penn-America's conduct created the impasse, so the *point* of impasse could not have occurred until early 2026. In any event, Warehouse relied on the same conduct—denying coverage before suit, requesting the expert report, removing to this Court, propounding discovery, designating experts, and engaging in mediation—that the Court has already considered and rejected.

The failed mediation on February 5, 2026, marked the point at which negotiations reached an impasse. *See Gonzalez v. Allstate Tex. Lloyds*, No. 7:19-CV-00137, 2020 WL 520769, at *5 (S.D. Tex. Jan. 31, 2020) (failed mediation signaled impasse); *see also Hamorsky*, 455 F.Supp.3d at 298 (same); *McCrackin v. Meridian Sec. Ins. Co.*, No. 4:22-CV-02430, 2023 WL 4139024, at *3 (S.D. Tex. June 22, 2023) (same); *Tanglegrove TH Condo Assoc. v. Journey Ins. Co.*, No. 4:23-CV-01135, 2023 WL 7222128, at *4 (S.D. Tex. Nov. 2, 2023) (same).

### 2.     Unreasonable Delay

The Court must next consider whether Penn-America unreasonably delayed in invoking appraisal on March 26, 2026,[1] after the impasse on February 5, 2026. The Court finds that it did not.

---

[1]     Warehouse contends that Penn-America invoked appraisal on April 10, 2026, when it moved the Court to compel appraisal. (*See* Dkt. No. 16 at 8 (citing Dkt. No. 15)). But Penn-America invoked appraisal and designated its appraiser on March 26, 2026, via a letter. (Dkt. No. 15-2 at 1–2). Accordingly, March 26, 2026, is the operative date.

Penn-America's roughly seven-week delay was not unreasonable. Texas courts routinely reject waiver arguments based on longer delays. *See Rogers v. Nationwide Gen. Ins. Co.*, No. 4:18-CV-00213, 2018 WL 3840940, at *4 (E.D. Tex. Aug. 13, 2018) (finding six-month delay in invoking appraisal after impasse did not constitute waiver); *Adami v. Safeco Ins. Co. of Ind.*, No. 4:17-CV-00574, 2018 WL 501093, at *5 (E.D. Tex. Jan. 22, 2018) (finding five-month delay in invoking appraisal after impasse did not constitute waiver); *Martinez v. Nationwide Gen. Ins. Co.*, No. 3:19-CV-01541, 2020 WL 3606399, at *3 (N.D. Tex. July 2, 2020) (finding that "plaintiffs['] [invocation of] appraisal within three to eleven months of" impasse did not constitute waiver); *Hart Chesnutt, LLC v. Covington Specialty Ins. Co.*, 622 F.Supp.3d 306, 314 (N.D. Tex. 2022) (noting that a possible three-month delay in invoking appraisal was not unreasonable).

### 3.    Prejudice

Even if Penn-America unreasonably delayed invoking appraisal, Warehouse has not shown prejudice. *Universal Underwriters*, 345 S.W.3d at 411 ("[M]ere delay [in seeking appraisal] is not enough to find waiver; a party must show that it has been prejudiced."). Prejudice must result from the delay itself and must affect a party's legal rights or financial position. *Id.* The Texas Supreme Court has observed:

> [I]t is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself. This could short-circuit potential litigation and should be pursued before resorting to the courts.

*Id.* at 412.

Warehouse argues it has been prejudiced by Penn-America's delay in invoking appraisal because it has incurred litigation expenses. (Dkt. No. 16 at 16–18). But this prejudice is self-inflicted. The policy allows Warehouse to demand appraisal and it chose not to. (Dkt. No. 15-1 at 67). By bypassing the less expensive appraisal process, Warehouse assumed the higher costs of litigation. Further, most of the litigation expenses that Warehouse cites were incurred before the impasse. (*See* Dkt. No. 16 at 16–17); (*see also* Dkt. No. 16-4 at 2–14).

As for the period between the impasse and the appraisal demand (*i.e.*, February 5 through March 26, 2026), Warehouse claims that after Penn-America designated several experts, it prepared and produced expert reports in response and prepared for depositions and trial. (Dkt. No. 18 at 6). To be sure, Penn-America did disclose its experts on March 2, 2026. (Dkt. No. 14). But Warehouse's comprehensive legal billing statement (which includes the hours worked on the case, the date, and an activity description) reflects little work tied to those disclosures. (*See* Dkt. No. 16-4 at 12–13). The records do not show that Warehouse prepared rebuttal expert reports, prepared for trial, or undertook substantial deposition work because of the designations. At most, the records show limited time spent coordinating deposition scheduling and notices.[2] (*Id.*). Those expenses do not establish prejudice sufficient to waive appraisal. As such, Warehouse

---

[2]   An attorney spent 0.6 hours reviewing and responding to an email about deposition scheduling. (Dkt. No. 16-4 at 12). A paralegal spent 7.8 hours largely scheduling depositions and noticing them. (*Id.* at 12–13).

has failed to carry its burden to show it was prejudiced by Penn-America's delay in invoking appraisal. Penn-America did not waive its right to appraisal.[3]

### C.  ABATEMENT

Penn-America asks the Court to stay the case pending appraisal. (Dkt. No. 15 at 6–7). "The Court finds abatement appropriate here because appraisal may resolve [Warehouse's] breach claim, and resolution of the breach claim may resolve any remaining extra contractual claims. Thus, it is possible appraisal could resolve this case in full, vitiating the need for any further proceedings." *See Lopez v. Allstate Tex. Lloyds*, No. 7:18-CV-00260, 2019 WL 3238465, at *1 (S.D. Tex. Jan. 17, 2019) (granting unopposed motion to abate proceedings pending appraisal). Therefore, the Court stays the case pending completion of appraisal.

### IV.  CONCLUSION

Considering the foregoing analysis, the Court **GRANTS** Penn-America's Opposed Motion to Compel Appraisal Process and Motion to Abate. (Dkt. No. 15).

It is further **ORDERED** that the Parties shall file a joint status report within 14 days after appraisal is completed.

It is further **ORDERED** that, regardless of whether appraisal has been completed, the Parties shall also file a joint status report 120 days from the date of this Order.

---

[3]  Penn-America also argues that it could not have waived appraisal here because the policy contains a non-waiver clause. (Dkt. No. 15 at 4–6). Specifically, Penn-America contends that the clause permits waiver or amendment of the policy's terms only "by endorsement issued by [Penn-America]." (*Id.* at 6). Warehouse alleges that the non-waiver clause only applies to "coverage parts included in the policy"—not appraisal. (Dkt. No. 16 at 2). Because the Court finds that Penn-America did not waive appraisal, the Court need not decide whether the non-waiver clause applies to the appraisal provision.

Alternatively, the Parties may file a stipulation of dismissal that complies with Federal

Rule of Civil Procedure 41(a)(1)(A)(ii) before the 120-day deadline.

It is SO ORDERED.

Signed on June 18, 2026.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

12